FILED

2022 Oct-24  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **RAY BEAVERS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:22-CV-00592-RDP** |
| | } | |
| **CITY OF ONEONTA, ALABAMA,** *et al.,* | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on a Motion to Dismiss filed by Defendants Officer Tommy Herd ("Herd") and the City of Oneonta, Alabama ("Oneonta"). (Doc. # 19). The Motion has been fully briefed. (Docs. # 20, 30, 31). After careful consideration, the court concludes that Defendants' Motion (Doc. # 19) is due to be granted in part and denied in part.

## I.     Plaintiff's Well-Pleaded Allegations

In May 2020, two police officers responded to a call made by a woman stating that Plaintiff, 71-year-old Ray Beavers, was outside her door. Herd was one of those officers. After frisking Plaintiff and determining that he was not armed, the officers arrested him. Plaintiff, who was recovering from rotator cuff surgery, informed the officers of his condition as they began to cuff him. Despite his pleas to cuff him in the front because his arm would not go behind his back, and despite Herd's own observation that Plaintiff's arm could not go behind his back, Herd continued cuffing Plaintiff with his arms behind his back because he says that was the Oneonta Police Department's policy. Herd forced Plaintiff's arm behind his back until it popped, re-injuring the shoulder.

Plaintiff has brought this federal action claiming that Defendants violated his Constitutional rights. In his complaint, Plaintiff has alleged that Herd deprived him of his rights under the Fourth and Fourteenth Amendments by unlawfully seizing him without reasonable suspicion or probable cause and by using excessive force in so doing. (Doc. # 17 at 7-8).[1] Plaintiff has further alleged that Herd's conduct violated Alabama state law. (*Id.* at 8-9). Finally, Plaintiff alleges that Oneonta violated Title II of the Americans with Disabilities Act ("ADA") by acting with deliberate indifference towards his injury. (*Id.* at 9-10).

Plaintiff seeks compensatory and punitive damages. Defendants Herd and Oneonta have jointly moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 20). This court exercises federal question jurisdiction pursuant to 28 U.S.C § 1331 over Counts One, Two, and Five because the claims arise under the laws of the United States. The court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counts Three and Four because they arise out of a common nucleus of operative fact.[2]

## II.    Standard of Review

### A.  Federal Rule of Civil Procedure 12(b)(6) Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards,

---

[1] Plaintiff also named as a defendant but subsequently dismissed a second officer, David Egan. Egan is no longer a party to this action. (Doc. # 29).

[2] The court notes that Beavers failed to include a "short and plain statement of the grounds for the court's jurisdiction" as required by Fed. R. Civ. P. 8(a)(1). Defendants did not challenge personal jurisdiction or venue in their first responsive pleading and the court has satisfied itself that it has subject matter jurisdiction.

nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### III.     Analysis

Plaintiff asserts four claims against Herd: Count One, an illegal seizure/false arrest claim pursuant to 42 U.S.C. § 1983; Count Two, an excessive force claim pursuant to 42 U.S.C. § 1983; Count Three, a false arrest/false imprisonment claim pursuant to Alabama state law; and Count Four, an assault and battery/excessive force claim under Alabama state law. (Doc. # 17 at 7-10). Plaintiff presents two claims against Oneonta: Count Two, described above, and Count Five, a discrimination claim under Title II of the ADA. Herd and Oneonta have moved to dismiss all five claims.

### A.     Count One of Plaintiff's Complaint Has Plausibly Alleged a False Arrest Against Herd.

A warrantless arrest made without probable cause is an unreasonable seizure that violates the Fourth Amendment. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (citing *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)). The reverse is also true. The presence of probable cause renders an arrest lawful on its face and is an absolute bar to a false arrest claim. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (citing *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (internal citations omitted). However, "[w]hile probable cause requires only a probability or substantial chance of criminal activity, mere suspicion is not enough." *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992) (citing *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir. 1990). Generally, "[p]robable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." *Rankin*, 133 F.3d, at 1435.

Ultimately, at the dismissal stage, the court's role is narrow. If a Plaintiff plausibly alleges facts that show the arrest lacked probable cause based on the totality of the circumstances, a motion to dismiss necessarily fails. Taking all well-pleaded allegations as true, Plaintiff has doubtlessly met his burden. The facts suggest that Plaintiff arrived at his soon-to-be ex-wife's home in order to deliver mail to her. (Doc. # 17 at 2). She then called the police about Plaintiff being at her house and reported his knocking at her door but reported no crime. *Id*. The police arrived as Plaintiff was leaving, ultimately stopping and frisking him for weapons. *Id*. After taking the mail from Plaintiff and handing it to his wife, Herd confirmed with her that Plaintiff had committed no crime, that there was no restraining order in effect, *that she did not ask Plaintiff to leave*, and that she had not previously prohibited Plaintiff from coming onto her property. (*Id*. at 2-3). As plausibly alleged, these facts do not suggest the presence of any probable cause to arrest. Nor do they suggest the presence of "arguable probable cause," a lower standard applied in the qualified immunity arena requiring only that a reasonable officer could have believed that probable cause existed.[3] *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007). (*See also* Doc. # 20 at 7).

Defendants suggest that Plaintiff "summarily contend[s], without more" that he was not committing a crime. In fact, Plaintiff alleges that his wife told Herd directly that Plaintiff had not committed a crime. Defendants continue, "plaintiff's ex-wife felt *threatened* by plaintiff's presence on her property and called the police about his removal." *Id*. (emphasis added). But this contention is unpersuasive. First, as Defendants acknowledge, Plaintiff alleged that his wife told the officers that Plaintiff "did nothing other than knock on her door, that there was no restraining order, that she did not ask plaintiff to leave, and that she had not previously prohibited [Plaintiff] from coming onto her property." (Doc. # 17 at ¶ 17). Second, his wife's mental state is precisely

___

[3] The "arguable probable cause" standard is relevant only to a qualified immunity analysis, as made clear by *Skop*.

the sort of question that requires discovery. The court cannot infer from Plaintiff's allegations that his wife "felt threatened" by his presence. Such an inference is not alleged in the amended complaint and, in any event, would require a foray beyond the four corners of the complaint and therefore would be inappropriate at this stage.

Finally, Defendants contend that "[i]t is well established that an officer's obligation to investigate does not end simply because one spouse denies any harm after a domestic dispute call has been made." (Doc. # 20 at 9) (citing *United States v. Goree*, 365 F.3d 1086, 1091 (D.C. Cir. 2004) and *United States v. Johnson*, 364 F.3d 1185, 1192 (10th Cir. 2004)). To be sure, it is sound policy to ensure that responding officers do not "blithely send[] the couple on their way" upon a denial from a potential victim that any harm has been done. (Doc. # 20 at 9) (citing *Fletcher v. Town of Clinton*, 196 F.3d 41, 52 (1st Cir. 1999)). While correct, that point is inapposite here. First, the nature of the wife's call to police is unclear. Further, Plaintiff has plausibly alleged that Herd *did* conclude his investigation when Plaintiff's wife denied any harm. But, it is claimed he still decided to arrest Plaintiff despite the wife's denials. Because Plaintiff has plausibly alleged a lack of probable cause, Defendants' Motion to Dismiss Count One is due to be denied.

### B.   Count Two of Plaintiff's Complaint Has Plausibly Alleged an Excessive Force Claim Against Herd But Not the City.

"For purposes of claims under § 1983, three constitutional provisions protect a right to be free from excessive force: the Fourth, Eighth, and Fourteenth Amendments." *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019)). The Supreme Court has long held that the analysis of a § 1983 claim of excessive force "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal citations omitted). Here, the Plaintiff relies on the Fourth and Fourteenth Amendments to support his § 1983

excessive force claim against Herd and the City of Oneonta. The court considers the Fourth Amendment claims against each defendant in turn. Then, the court analyzes Plaintiff's claims under the Fourteenth Amendment.

### 1. The Excessive Force Claim Against Defendant Herd.

In an excessive force case, the Fourth Amendment's "objective reasonableness" standard governs whether a constitutional violation has occurred. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). The "objective reasonableness" of an officer's force should be judged from the perspective of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1969)). Several factors are instructive (though not determinative) in assessing whether a use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." *Hadley*, 526 F.3d at 1329 (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)); *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The use of physical force by an arresting officer is not itself a showing of a plausible claim to relief. Indeed, any arrest necessarily requires some level of physical force, and it cannot be claimed that every arrest is a Fourth Amendment violation. *Graham*, 490 U.S., at 396. A proper application of the Fourth Amendment requires a review of the particular facts and circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight. *Id*. (citing *Tennessee v. Garner*, 471 U.S., at 8-9 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure")).

Using these standards, the court concludes that Plaintiff has plausibly alleged an excessive force violation under the Fourth Amendment. It is well established in our circuit that police officers "cannot employ gratuitous and seriously injurious force against non-resisting subjects who are under control." *Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022) (internal citations omitted). Moreover, a suspect need not be handcuffed in order to be "under control." *Id*. at 1252-53 (citing *Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 & n. 33 (11th Cir. 2017)). The Eleventh Circuit has clearly held that "serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim." *Id*. at 1253 (internal citations omitted).

The plausibly alleged facts indicate that Plaintiff was the victim of a disproportionate and significant use of force resulting in serious and substantial injuries. Further, the crime at issue -- trespass -- was not particularly severe, there is no indication that Plaintiff, who is 71 years old, was a threat to anyone at the time he was handcuffed, and Plaintiff did not appear to have been resisting or evading arrest. Thus, taking all well-pleaded factual allegations as true, Plaintiff has properly alleged an excessive force claim against Herd.

Defendants contend that Plaintiff's excessive force claim should be dismissed because the application of force was *de minimis*. (Doc. # 20 at 11-16). To be sure, "the application of *de minimis force*, without more, will not support a claim for excessive force…." *Nolin v. Isbel*, 207 F.3d 1253, 1257 (11th Cir. 2000). Defendants cite to a string of cases holding that painful handcuffing resulting in minimal injury will not in itself support an excessive force claim. (Doc. #

20 at 12) (citing *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002); *Secondo v. Campbell*, 327 F. App'x. 126, 132 (11th Cir. 2009); *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997)). And, Defendants particularly rely on *Secondo* to support their contention that the use of force was *de minimis*. (Doc. # 20 at 12-14). However, *Secondo*, an unpublished decision, is readily distinguishable from this case in two primary respects.

First, in *Secondo*, the panel cites *Lee v. Ferraro* and *Rodriguez v. Farrell* to support two propositions that (a) reasonable force does not become excessive when the force aggravates a preexisting condition *unknown* to the officer at the time the force was used; and (b) that the police officer "need not credit everything a suspect tells him…." *Secondo*, 327 F. App'x. at 132 (citing *Lee v. Ferraro* 284 F.3d 1188, 1200 (11th Cir. 2002); *Rodriguez v. Farrell* 294 F.3d 1276, 1278 (11th Cir. 2002)). These legal principles are well-taken but do not neatly apply to the present case. Crucially, Officer Herd did not need to rely solely on Plaintiff's assurances that he had a preexisting injury — it is plausibly alleged here that Herd himself felt that Plaintiff's arms could not go behind his back despite Plaintiff not resisting. (Doc. # 17 at ¶ 50). The amended complaint alleges that Herd had knowledge of Plaintiff's pre-existing injury and acquired that knowledge independently of Plaintiff's representations.

Second, the pleadings allege more than *de minimis* force. In *Secondo*, the Eleventh Circuit was considering a motion for summary judgment and reached its conclusion after "careful consideration of the record evidence." *Secondo*, 327 Fed. App'x. at 128. The Eleventh Circuit held that its view of the evidence "does not reveal any indication that [defendant] handled [plaintiff] in an objectively unreasonable manner." *Id*. at 132-33. At the dismissal stage, this court has no such record to consider. Plaintiff has plausibly alleged the use of force was more than *de minimis*.

2. ***Excessive Force under the Fourth Amendment as to Defendant City of Oneonta.***

Municipalities can be held liable for § 1983 violations only if a plaintiff can establish that the municipality's "official policy" *caused* a constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff can establish an official policy by identifying either: (1) an officially promulgated policy; or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker. *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell* v. *Dep't. of Social Services of City of New York*, 436 U.S. 658, 691 (1978)). If a plaintiff establishes an official policy, the court must then consider whether there is a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. *City of Canton, Ohio*, 489 U.S. at 385. Importantly, a city is not automatically liable simply because a city employee happened to apply a policy in an unconstitutional manner. *Id*. at 387.

Here, Plaintiff has plausibly alleged that handcuffing suspects behind their back regardless of extenuating circumstance was Oneonta's official policy. However, the court cannot conclude that this policy directly caused any deprivation of Plaintiff's constitutional rights. Plaintiff offers only conclusory allegations of the policy's unconstitutionality. In his reply to Defendants' Motion to Dismiss, Plaintiff relies on his unlawful arrest and excessive force § 1983 allegations against Officer Herd to support the proposition that the handcuffing policy itself is unconstitutional. (Doc. # 30 at ¶¶ 19-20). But that is insufficient to show a causal link here. As explained above, painful handcuffing, without more, cannot be the basis for an excessive force claim. *Rodriguez*, 280 F.3d at 1351 (citing *Nolin*, 207 F.3d at 1257-58). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" where the policy relied upon is not itself unconstitutional. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985). The City's policy

amounted to no more than mere handcuffing. To the extent a constitutional violation may have occurred, it was caused by Herd's improper use of force; not by the existence of a policy. Because the city's handcuffing policy does not rise to the level of a constitutional violation, Defendant's Motion to Dismiss Plaintiff's Excessive Force Claim against the City of Oneonta is due to be granted. (Doc. # 19 at ¶ 2(b)).

        ***3.***    ***Excessive Force Under the Fourteenth Amendment as to all Defendants.***

Generally, "while the Fourth Amendment prevents the use of excessive force during arrests, and the Eighth Amendment serves as the primary source of protection against excessive force after conviction, it is the Fourteenth Amendment that protects those who exist in the in-between – pretrial detainees." *Piazza v. Jefferson County, Ala.*, 923 F.3d 947, 952 (11th Cir. 2019) (internal citations omitted). However, "the line is not always clear as to when an arrest ends, and pretrial detainment begins." *Crocker v. Beatty*, 995 F.3d 1232, 1247 (11th Cir. 2021) (quoting *Garrett v. Athens-Clarke Cnty.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004)). Consequently, "the line -- for excessive-force purposes -- between an arrestee and a pretrial detainee isn't always clear, either." *Id.* (citing *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005)).

Here, however, there is little to suggest that Plaintiff was anything but an arrestee at the time he was a victim of the alleged excessive force. Unlike in *Crocker*, in which the line between arrestee and detainee was arguably blurred when the plaintiff was held immediately following arrest in a hot police car, in this case Plaintiff alleges he was subjected to excessive force while being handcuffed incident to his arrest. It would strain credulity to suggest that Plaintiff was a pretrial detainee and thus could seek the protection of the Fourteenth Amendment for excessive

force allegedly used in handcuffing him. As such, any claim of excessive force supported by the Fourteenth Amendment is due to be dismissed.[4]

### C.     The Current Pleadings and Record are Insufficient to Grant Qualified Immunity to Herd.

Generally, to be entitled to qualified immunity, a government official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillan*, 939 F.2d 1479, 1487 (11th Cir. 1991)). A government official's conduct is within the scope of his or her discretion if "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (internal citations omitted). If a defendant establishes that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* To do so, a plaintiff must demonstrate that "the defendant violated her constitutional rights, and … that, at the time of the violation, those rights were 'clearly established … in light of the specific context of the case….'" *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part on other grounds)).

When considering whether the relevant conduct was clearly established as a constitutional violation at the time the government official engaged in the conduct, courts look for "fair warning" to officers that the conduct at issue violated a constitutional right. *Id.* (quoting *Jones v. Fransen*,

---

[4] Even if the court granted that Plaintiff was entitled to an analysis of his Fourteenth Amendment claim on the merits, such an analysis would mirror the Fourth Amendment analysis above and arrive at the same conclusion because the Fourteenth Amendment analysis uses the same objective reasonableness standard and similar criteria as the Fourth Amendment analysis. *See e.g., Patel v. Lanier Cnty. Ga*., 969 F.3d 1173, 1182 (11th Cir. 2020) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2020) (providing a non-exhaustive list of considerations as to whether a use of force was objectively reasonable under the Fourteenth Amendment)).

857 F.3d 843, 851 (11th Cir. 2017)). There are three methods of showing that a government official had fair warning:

> *First*, the plaintiffs may show that a materially similar case has already been decided. *Second*, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. *Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court].

*Id.* (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012)). The first method requires that existing precedent has placed the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The second and third methods exist where "the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Gaines*, 871 F.3d at 1209 (internal citations omitted).

Here, Herd has met his burden to show that he was acting within the scope of his discretionary authority when the alleged excessive force occurred. It is undeniable that, if done for a proper purpose, even unnecessarily forceful handcuffing would be at least reasonably related to the outer perimeter of Defendant's discretionary duties. The burden, then, shifts to Plaintiff to show that Herd had a "fair warning" that his conduct violated a constitutional right. While Plaintiff will likely have difficulty meeting this burden, the court does not agree with Defendants that Plaintiff cannot make such a showing.

Herd relies on earlier arguments that plaintiff was arrested with probable cause and was subject only to reasonable, *de minimis* force by the arresting officer. For reasons already discussed, however, these arguments are unpersuasive at this stage. Because Plaintiff has plausibly alleged that he was arrested without probable cause and was subjected to excessive force, it necessarily

follows that he be given the opportunity to satisfy his "fair warning" burden with respect to qualified immunity.

**D.** **Plaintiff's State Law Claims of False Arrest/False Imprisonment and Assault and Battery are Due to be Dismissed.**

Public officers acting within the general scope of their authority when engaged in the exercise of a discretionary function are afforded state-agent immunity. *Bell v. Chisolm*, 421 So. 2d 1239, 1240-41 (Ala. 1982) (citing R2d Torts § 895D); *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). The burden lies with the state agent asserting immunity to demonstrate that the plaintiff's claims "arise from a function that would entitle the state agent to immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (quoting *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). If the defendant satisfies his or her burden, the burden then shifts to the plaintiff to show "that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable." *Id*. (citing *Ex parte Cranman*, 792 So.2d at 405). The exceptions laid out in *Cranman* are:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d at 405.

Here, the court finds that Herd has satisfied his burden to demonstrate that the claims arise from a typical law enforcement function. Arresting suspects at the scene of a potential crime is well within the discretion of police officers. Indeed, such conduct is precisely the sort of conduct that state agent immunity is designed to protect. Thus, the burden shifts to Plaintiff to show that

one of the two exceptions to state-agent immunity recognized in *Cranman* is available. Neither exception applies here.

The first exception clearly does not apply because there are no state or federal laws of which this court is aware requiring that state agents not be immune to civil liability. Consequently, in order to defeat state-agent immunity, Plaintiff must show that Herd acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. *Id.*; *Ex parte Ingram*, 229 So. 3d 220, 229 (Ala. 2017) (quoting *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006); *Ex parte Jones*, 52 So. 3d 475, 479–80 (Ala. 2010); *Ex parte Yancey*, 8 So. 3d 299, 304–05 (Ala. 2008)).

Plaintiff cannot meet his burden because he has not set forth any factual allegations that could plausibly support such a conclusion. *See e.g.*, *Ex parte Gilland*, 274 So. 3d 976, 985 (Ala. 2018). Plaintiff himself concedes that Herd's behavior might simply have been negligent or wanton. (Doc. # 17 at ¶¶ 70, 73). Such conduct is not sufficient to defeat the immunity that state agents are provided. *City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002). Because Plaintiff has failed to provide facts that might satisfy the second exception to state agent immunity, his state law claims are due to be dismissed.

### E.    Count Five Alleging a Violation of the Americans with Disabilities Act ("ADA") is due to be Dismissed.

The Eleventh Circuit has "never addressed whether police officers can violate Title II of the ADA." *Estate of Osorio v. Miami Dade County*, 717 F. App'x 957, 957 (11th Cir. 2018). "However, assuming, *arguendo*, that such a claim is cognizable, [the Eleventh Circuit] ha[s] held that a plaintiff seeking compensatory damages under the ADA must show 'discriminatory intent.'" *Id.* (quoting *McCullum v. Orlando Reg. Mid. Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014)). "A party may prove discriminatory intent through deliberate indifference, which occurs

when 'the defendant knew that harm to a federally protected right was substantially likely and ...

failed to act on that likelihood.'" *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334,

344 (11th Cir. 2012). The Eleventh Circuit has also provided a standard for bringing a Title II

claim, holding that

> [i]n order to state a Title II claim, a plaintiff generally must prove (1) that he is a
> qualified individual with a disability; (2) that he was either excluded from
> participation in or denied the benefits of a public entity's services, programs, or
> activities, or was otherwise discriminated against by the public entity; and (3) that
> the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's
> disability

*Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 256

F.3d 1077, 1079 (11th Cir. 2001)).

Even assuming *arguendo*, as the Eleventh Circuit has, that Title II may apply to police

officers and consequently to the cities that employ them,[5] Plaintiff has failed to state such a claim

because his allegations do not satisfy every prong of the *Bircoll* test. Defendants do not challenge

Plaintiff's assertion that he is a qualified individual with a disability. The court thus continues to

the second prong. Plaintiff claims that Officer Herd's failure to accommodate him by handcuffing

him in the front of his body amounts to discrimination as prohibited by the ADA and *Bircoll*. (Doc.

# 30 at ¶ 22). To survive a motion to dismiss, Plaintiff must plausibly allege discriminatory intent.

To do so, he must allege deliberate indifference, meaning that the City of Oneonta knew that harm

to a federally protected right was substantially likely.

Plaintiff has not plausibly alleged discriminatory intent. While Plaintiff is correct that the

Rules of Civil Procedure do not require "detailed" allegations (Doc. # 30 at ¶ 23), they do require

---

[5] The questions of whether Title II applies to officers and whether a public entity can be liable for damages
under Title II for an arrest made by its officers were addressed but not decided by the Supreme Court in *City of San
Francisco, Calif. v. Sheehan*, 575 U.S. 600, 610 (2015) (holding in relevant part that those issues should not be decided
in the absence of adversarial briefing).

that allegations rise above the speculative level, containing "more than simply a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 557. Plaintiff offers little more than the words "deliberate indifference" in his effort to allege discriminatory intent. (Doc. # 17 at ¶ 79). Because the allegations supporting Plaintiff's ADA claim do not meet the *Twombly* standard for well-pleaded allegations, Count Five is due to be dismissed. Further, because Plaintiff has not properly alleged discriminatory intent, the court need not analyze the ADA claim under *Bircoll*'s third prong.

## F.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. # 19) is due to be granted in part and denied in part. An order in accordance with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this October 24, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE